UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELEVATE CARE COUNTRY CLUB        )
HILLS, LLC.,                     )
                                 )
                    Plaintiff,   )
                                 )    No. 24 C 4755
          v.                     )
                                 )    Judge Kness
XAVIER BECERRA, *et al.*,         )
                                 )
                    Defendants.  )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Elevate Care Country Club Hills, LLC ("Country Club Hills") is an Illinois nursing home that underwent several government inspections (surveys) in 2023 and 2024, which found numerous violations of the Medicare participation requirements for nursing homes. Monetary and other remedies were imposed on Country Club Hills for the violations. In its complaint, Country Club Hills requests that this court overturn the survey findings and the associated remedies, as well as declaratory judgments that certain nursing home regulations and agency manual provisions violate the Medicare provisions of the Social Security Act, the APA, and the Constitution. But binding Supreme Court and Seventh Circuit precedent requires that these claims be dismissed due to lack of subject-matter jurisdiction, which exists only under 42 U.S.C. § 405(g). Here, subject-matter jurisdiction cannot exist under § 405(g), because Country Club Hills has neither presented its claims to the agency nor exhausted administrative remedies. The statute also specifically bars jurisdiction under 28 U.S.C. § 1331, the provision upon which Country Club Hills relies. 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii. In addition, Country Club Hills lacks standing, and some of its claims are barred by sovereign immunity. For all these reasons, the complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).

**Statutory and Regulatory Background**

Medicare is a federally subsidized health care program that reimburses certified providers for certain services provided to Medicare beneficiaries. Defendant Secretary of Health and Human Services Xavier Becerra ("the Secretary") administers Medicare through the Centers for Medicare & Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services ("HHS"). Defendant Chiquita Brooks-LaSure is the Administrator of CMS.

## I. The Medicare Act Requires Nursing Homes to Undergo Regular Surveys.

Nursing homes that participate in Medicare must comply with participation requirements in the Medicare Act and its implementing regulations.[1] For ease of reference, CMS organizes the nursing home regulations (in 42 C.F.R. Part 483) under headings called "tags," set out in Appendix PP of CMS's State Operations Manual (SOM), CMS Pub. 100-07.[2] *See* HHS Ex. 18, ¶ 3.

The Secretary contracts with state health agencies, including the Illinois Department of Public Health ("IDPH"), to survey Medicare-participating nursing homes to determine compliance with the participation requirements. 42 U.S.C. §§ 1395aa & 1395i-3(g); 42 C.F.R. § 488.20. If the state agency determines that a nursing home has failed to meet a Medicare requirement, it cites a deficiency. 42 C.F.R. § 488.301 (defining deficiency).

After completion of a survey, the state agency or CMS issues the nursing home a copy of the survey findings on Form CMS-2567. *See* CMS, *CMS 2567*, *Downloads*, https://www.cms.gov/medicare/cms-forms/cms-forms/cms-forms-items/cms008860 (rev. Mar. 18, 2022). Survey findings are recorded in the "Statement of Deficiencies" section on the left side of the form. *Id.* The facility completes a "Plan of Correction" on the right side of the form to explain how it will cure deficiencies. *Id.*; *see also* 42 C.F.R. § 488.401 ("Plan of correction").

---

[1] Title XVIII of the Social Security Act, codified at 42 U.S.C. § 1395 *et seq.*, is commonly referred to as the "Medicare Act."

[2] Available at https://www.cms.gov/regulations-and-guidance/guidance/manuals/internet-only-manuals-ioms-items/cms1201984.

The Medicare Act and regulations provide for different types of surveys. Facilities receive an annual or "*standard*" survey at intervals of no more than 15 months; statewide average intervals must be 12 months or less. *Id.* § 488.308(a)-(b). Annual surveys are unannounced, *id.* § 488.307, and cover all aspects of resident care and nursing home procedures and practices, *id.* § 488.305. *Complaint* surveys occur when the state receives an allegation relevant to a facility's compliance with participation requirements. *Id.* § 488.308(f). States must timely review and investigate allegations involving resident abuse, neglect, or misappropriation of resident property. *See id.* § 488.335(a)(3); 42 U.S.C. § 1395i–3(g)(1)(C). *Revisit* surveys are used to determine whether nursing homes have corrected deficiencies cited at earlier surveys. 42 C.F.R. § 488.308(c).

Deficiency citations from these surveys include a "scope and severity rating." Severity involves the potential for harm, with four classifications ranked in increasing order: potential for minimal harm, potential for more than minimal harm, actual harm, and immediate jeopardy. 42 C.F.R. § 488.404(b)(1). Scope involves the number of residents who could be affected, with three classifications ranked in increasing order: isolated, pattern, and widespread. *Id.* § 488.404(b)(2). In the SOM, CMS organizes the twelve possible combinations in the following matrix.

| | | | |
|---|---|---|---|
| Immediate jeopardy to resident health or safety | **J** | **K** | **L** |
| Actual harm that is not immediate jeopardy | **G** | **H** | **I** |
| No actual harm with potential for more than minimal harm | **D** | **E** | **F** |
| No actual harm with potential for no more than minimal harm | **A** | **B** | **C** |
| | Isolated | Pattern | Widespread |

SOM, CMS Pub. 100-07, Chapter 7 § 7400.3.1. A facility is considered in *substantial* compliance if it has deficiencies at the "A," "B," or "C" levels only. *Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 594 (7th Cir. 2014); 42 C.F.R. § 488.301 (defining substantial compliance).

**II.     CMS May Impose Remedies for Deficiencies.**

If CMS determines that a facility is out of substantial compliance, it may, and sometimes must, impose remedies. *Sunshine Haven Nursing Operations LLC v. U.S. Dep't of Health and Human Servs.*, 742 F.3d 1239, 1245 (10th Cir. 2014). These remedies include, among others, denial of payment for new admissions ("DPNA"), 42 U.S.C. § 1395i–3(h)(2)(B)(i), civil money penalties ("CMPs"), *id.* § 1395i–3(h)(2)(B)(ii), and termination of the facility's Medicare provider agreement, *id.* §§ 1395i–3(h)(2)(A)(i), (h)(4), 1395cc(b)(2)(A).

When a revisit survey finds that a facility has returned to substantial compliance with participation requirements, the facility receives a Post-Certification Revisit Report, Form CMS – 2567B showing the return to compliance dates. *See, e.g.*, HHS Ex. 4. The length of time that a facility is found to be out of substantial compliance is significant because the Medicare Act requires the Secretary to impose a DPNA after three months, and to terminate the facility's provider agreement after six months, of continuous noncompliance. 42 U.S.C. § 1395i-3(h)(2)(C)-(D). Also, if imposed, DPNAs continue in effect, and per-day CMPs continue to accrue, while a facility remains out of substantial compliance. 42 C.F.R. §§ 488.417, 488.440(b).

**III.    Nursing Homes May Appeal Remedies That CMS Imposes.**

There is a robust, well-established appeal infrastructure for nursing homes that are found noncompliant and subject to enforcement remedies. When CMS imposes an enforcement remedy against a facility that has failed to substantially comply with a Medicare requirement, the nursing home may request a formal evidentiary hearing before an administrative law judge to contest its deficiency findings. 42 C.F.R. §§ 488.408(g)(1), 498.3(b)(13). Facilities may appeal not only the initial deficiency findings for which remedies are imposed, but also findings regarding the duration of noncompliance, provided that the duration affects the remedies. *Elant at Fishkill*, DAB No. 2468, 2012 WL 4863666, at *1 (2012). ALJ hearings are governed by the procedures in 42 C.F.R.

4

Part 498, 42 C.F.R. § 488.330(e)(3)(ii), and are appealable to the agency's Departmental Appeals Board (DAB or Board), 42 U.S.C. § 498.80, *et seq*. A three-member panel of the Board decides the appeal, and its decision becomes the Secretary's final decision. 42 C.F.R. § 498.90.

Only after the exhaustion of administrative remedies may a facility seek review in federal court. Jurisdiction exists under 42 U.S.C. § 1395cc(h)(1), which incorporates the judicial review provisions for retirement and disability claims in 42 U.S.C. § 405(g). That provision in turn authorizes judicial review only for a "final decision" of the Secretary "made after a hearing." 42 U.S.C. § 405(g). The Medicare Act also, in 42 U.S.C. § 1395ii, incorporates 42 U.S.C. § 405(h), which states (as incorporated) "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided." *Id.*

### Factual Background – The Survey Cycle at Issue

IDPH found plaintiff Country Club Hills out of substantial compliance with federal nursing home participation requirements in a series of surveys in 2023 and 2024:

- October 10, 2023: A complaint survey found Country Club Hills out of substantial compliance under tag F690 (42 C.F.R. § 483.25(e)(1)-(3)) for injuring a resident when improperly inserting a urinary catheter. HHS Ex. 1.

- November 15, 2023: A complaint investigation found Country Club Hills out of substantial compliance under tags F600 and tag F609 (42 C.F.R. § 483.12) related to a resident's unexplained leg fracture. HHS Ex. 2.

- December 22, 2023: In another complaint survey, IDPH found Country Club Hills out of substantial compliance under tags F600 and F607 (42 C.F.R. § 483.12(b)) related to verbal abuse of a resident. IDPH also cited tag F689 (42 C.F.R. § 483.25(d)) for failure to adequately protect three residents from falls, one of whom was hospitalized after falling. HHS Ex. 3.

- January 16, 2024: At the facility's annual survey, IDPH cited Country Club Hills under tag F690 for failure to properly affix a catheter, and tag F880 (42 C.F.R. § 483.80) for failure to follow its infection control policies. HHS Ex. 5.

- January 18, 2024: A Life Safety Code survey (*see* 42 U.S.C. § 1395i–3(d)(2)(B)) found various fire safety deficiencies. HHS Ex. 6.

5

- March 5, 2024: A complaint survey found Country Club Hills out of compliance under tag F677 (42 C.F.R. § 483.24(a)(2)) for failure to provide timely incontinence care, tag F689 for failure to protect two residents from falls, one of whom was hospitalized, and tag F697 (42 C.F.R. § 483.25(k)) for failure to administer physician-ordered pain medication. HHS Ex. 9.

In order to verify whether Country Club Hills had returned to substantial compliance with Medicare participation requirements cited at each of these surveys, IDPH surveyors conducted revisit surveys on January 12, 2024, February 22, 2024, March 1, 2024, and March 31, 2024. HHS Exs. 4, 7, 8, 11. The re-visit surveys demonstrate that Country Club Hills was out of substantial compliance starting on October 5, 2023, and did not return to substantial compliance with all participation requirements until March 6, 2024. HHS Exs. 1, 11, 16.

On March 26, 2024, CMS sent an Imposition of Remedies notice for the October 10, 2023 survey cycle. HHS Ex. 10. CMS imposed a $1,985 per-day CMP, a Discretionary DPNA, and a mandatory termination of Country Club Hills's provider agreement if it did not return to substantial compliance before April 10, 2024. *Id*. at 2, 4. CMS informed Country Club Hills that it had 60 days to appeal the citations and associated remedies to an ALJ, *id*. at 6, and that if it waived its right to appeal, the CMP would be reduced by 35% (*see* 42 C.F.R. § 488.436), *id*. at 3.

On April 15, 2024, CMS sent Country Club Hills a Disposition of Remedies notice closing out the survey cycle. HHS Ex. 12. Because Country Club Hills had returned to substantial compliance as of March 6, 2024, the termination of its provider agreement did not go into effect. CMS also informed Country Club Hills of the total amount of the CMP ($303,705.00) and the final duration of the Discretionary DPNA (from November 4, 2023, through March 5, 2023). *Id*. at 1-2. The Disposition of Remedies notice further reminded Country Club Hills of its appeal deadline and that it could waive its appeal rights to receive a 35% CMP reduction. *Id*. at 2.

On May 22, 2024, CMS sent Country Club Hills an email granting its request for the CMP amount to be reduced in light of the financial hardship it would cause. The new CMP amount was

$242,964.00. HHS Ex. 13. On May 24, 2024, Country Club Hills sent CMS a letter waiving its hearing rights in exchange for a further 35% reduction of the CMP. HHS Ex. 14. On June 5, 2024, CMS sent Country Club Hills a letter stating that since it had waived hearing rights, CMS was reducing the CMP amount as provided in 42 C.F.R. § 488.436. The final amount due was $157,926.60. HHS Ex. 15.

On June 7, 2024, Country Club Hills filed its complaint in this case. Dkt. 1 ("Compl.").

### Argument

This suit should be dismissed under Fed. R. Civ. P. 12(b)(1)[3] for lack of subject-matter jurisdiction. The Medicare Act bars actions under 28 U.S.C. § 1331, and neither the Declaratory Judgment Act nor the Administrative Procedure Act provides jurisdiction here. Country Club Hills has failed to present its claims and exhaust administrative remedies prior to filing suit as required by the Medicare Act. Additionally, Country Club Hills lacks standing for its claims, and some of them are barred by sovereign immunity. Country Club Hills, as the party asserting federal jurisdiction, has "the burden of proof to show that jurisdiction is proper" within the bounds of the Constitution and authorized by statute. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For the following reasons, it cannot meet that burden.

### I. The Medicare Act Is the Exclusive Source of Subject-Matter Jurisdiction in This Case.

The Medicare Act incorporates the jurisdiction-stripping provision in 42 U.S.C. § 405(h), which bars sources of jurisdiction other than § 405(g). 42 U.S.C. § 1395ii; *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-89 (7th Cir. 1990) (finding § 405(h) bars diversity jurisdiction). Country Club Hills cites 28 U.S.C. § 1331 as the basis for subject-matter

---

[3] In reviewing a Fed. R. Civ. P. 12(b)(1) motion to determine whether subject-matter jurisdiction exists, the court may look beyond the complaint to other evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir.1996).

jurisdiction, Compl. ¶ 1, but § 405(h) (as incorporated) explicitly provides that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 . . . of title 28 to recover on any claim arising under this subchapter."

The jurisdictional bar of § 405(h) goes "beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies,'" which by themselves would normally necessitate channeling the claim through the agency. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000). And the bar applies regardless of "the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." *Id*. at 13-14. The *Illinois Council* Court stated that § 405(h) "plainly bars § 1331 review in such a case, irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." *Id.* at 10.

Country Club Hills also cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, Compl. ¶ 1, but it is equally unavailing to allege subject-matter jurisdiction under these provisions. Even aside from the § 405(h) bar, neither provides an independent source of federal subject-matter jurisdiction. *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) (Declaratory Judgment Act), *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 457-58 (1999) (APA).

## II. Plaintiff Failed to Present Its Claims and Did Not Exhaust Administrative Remedies as Required by 42 U.S.C. § 405(g).

Section 405(g) offers the sole source of subject-matter jurisdiction for claims under the Medicare Act. But for jurisdiction to exist under § 405(g), a party must channel its claim through the Agency, by both presenting the claim to the Secretary and exhausting administrative remedies. *Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 923 (7th. Cir. 2022); *Heckler v. Ringer*, 466 U.S. 602,

8

617 (1984). The Supreme Court in *Mathews v. Eldridge* explained that the Secretary (or a court under certain narrow circumstances not at issue here) may waive the *exhaustion* requirement; however, it held that the *presentment* requirement is a "nonwaivable jurisdictional element." 424 U.S. 319, 330 (1976); *see also*, *Ill. Council*, 529 U.S. at 15 (describing presentment as "nonwaivable and nonexcusable").

### A. Requiring Plaintiff to Present and Exhaust Its Claims Accords with the Purposes of the Channeling Requirement.

This case provides a good illustration of the reasons that Medicare claims must be channeled through the agency. Congress required administrative review to give the agency the opportunity to correct any mistakes in its determinations prior to federal review. As the Seventh Circuit has observed:

> The exhaustion requirement serves an important purpose, preventing the premature interference with agency processes so that the agency can function efficiently and can correct its own errors, as well as affording the parties and the courts the benefit of the agency's experience and expertise and compiling a record which is adequate for judicial review.

*Michael Reese Hosp. and Med. Ctr.*, 427 F.3d 436, 441 (7th Cir. 2005).

While Country Club Hills protests that it is not contesting survey findings (Compl. ¶ 87), its central allegation is that it returned to substantial compliance with the participation requirements sooner than was found by CMS. Without showing a return to substantial compliance, there is no basis for the relief it seeks. But a dispute over compliance dates is precisely the type of challenge that HHS regularly adjudicates; and the relief Country Club Hills seeks—reversal of deficiency findings and associated remedies—is well within the administrative apparatus's ability to provide.

Country Club Hills claims that no meaningful administrative review of the duration of remedies is available to it because the dates of revisit surveys are not appealable. Compl. ¶ 39. This is not accurate, because it is the date of return to substantial compliance, not the date of the

9

revisit survey, that determines the duration of the remedies. As a general matter, the complaint rests on the mistaken idea that a facility cannot be found back in substantial compliance prior to the date of the revisit survey. CMS can and does find facilities in substantial compliance earlier than the dates of revisit surveys. For example, in the survey cycle at issue in this litigation, the January 12, 2024, February 22, 2024 and March 31, 2024 revisit surveys all found the facility to have successfully corrected tags *prior to* the date of the revisit. *See* HHS Exs. 4, 7, 11.

Moreover, if a facility disagrees with CMS's compliance dates, it can appeal them administratively. "The Board has consistently recognized that [42 C.F.R. §] 488.454(e) allows a provider appealing noncompliance findings that resulted in the imposition of a remedy the opportunity to also attempt to establish before the ALJ and the Board a compliance date earlier than that determined by CMS or the state." *Omni Manor Nursing Home*, DAB No. 2374, 2011 WL 2110678, at *7 (2011) (citing cases). A date of substantial compliance that affects the remedies "constitutes an appealable initial determination under the applicable regulations," *Elant*, 2012 WL 4863666, at *1, and it is the facility's burden to show, by a preponderance of the evidence, that it returned to substantial compliance earlier than CMS determined. *Evergreene Nursing Care Ctr.*, DAB No. 2069, 2007 WL 1354307, at *5-6 (2007). Indeed, ALJs can and do find that facilities have met their burden to show an earlier date. *See, e.g.*, *Maysville Nursing & Rehab. Facility*, DAB CR2032, 2009 WL 4731034, at *13 (2009), *aff'd*, DAB No. 2317, 2010 WL 2153409 (2010).

In any case, even if the duration of remedies were not appealable, that would not excuse exhaustion. As the *Illinois Council* Court noted,

> The fact that the agency might not provide a hearing for that *particular contention,* or may lack the power to provide one is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide[.]

*Ill. Council*, 529 U.S. at 23 (citations omitted). So, even if the regulations barred challenges to the duration of remedies (which, to be clear, they do not), Country Club Hills would be able to challenge those regulations after presentation and exhaustion of its claims.

### B. Constitutional Claims Are Not Exempt from the Channeling Requirement.

It makes no difference that Country Club Hills's claims include constitutional challenges to regulations. *See* Compl. ¶ 107. Like Country Club Hills (Compl. ¶ 116), the *Illinois Council* plaintiff argued that certain nursing home enforcement regulations were unconstitutionally vague and/or violated the Due Process Clause. *Ill. Council*, 529 U.S. at 7. The Court did not find these arguments sufficient to allow the plaintiff to bypass exhaustion.[4] As the Seventh Circuit has noted, "Even styling a claim arising under the Medicare Act as a constitutional challenge does not ordinarily permit a plaintiff to forgo exhausting administrative remedies." *Ill. Ins. Guar. Fund*, 33 F.4th at 924; *see also Generations at Elmwood Park, LLC v. Ezike*, No. 20 CV 533, 2023 WL 5804230, at *4 (N.D. Ill. Sept. 7, 2023) ("claims that contest a sanction or remedy" must satisfy § 405(g)'s "channeling requirements" to establish subject-matter jurisdiction under 28 U.S.C. § 1331 or § 1343(a)(3) even where plaintiff contests the "constitutionality of interrelated regulations or statutory provisions" or "agency policy determinations").

### III. Plaintiff Has Not Presented Its Claims and the Secretary Has Not Waived Exhaustion.

Controlling Supreme Court and Seventh Circuit case law establishes that presentation of claims and exhaustion of administrative remedies constitute a strict jurisdictional prerequisite to suit under the Medicare Act; where, as here, a Medicare provider seeks relief without presenting and exhausting its claims through the administrative review process, the case must be dismissed.

---

[4] Also like Country Club Hills (Compl. ¶ 98), the *Illinois Council* plaintiff challenged SOM provisions as invalid because the Secretary had not promulgated them according to APA rulemaking requirements. 529 U.S., at 7. The Court did not find that justified bypassing exhaustion, either.

11

*See Ill. Council*, 529 U.S. at 8-15; *Heckler*, 466 U.S. at 614-16; *Weinberger v. Salfi*, 422 U.S. 749, 763-65 (1975); *Ill. Ins. Guar. Fund*, 33 F.4th at 923; *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 623-24 (7th Cir. 2017); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589-91 (7th Cir. 2014); *Bodimetric Health Servs*, 903 F.2d at 489-90.

In this case, Country Club Hills's action arises under the Medicare Act because it seeks to nullify all the findings and associated remedies of the surveys in the cycle that started on October 10, 2023. *See Ill. Council*, 529 U.S. at 14 (claims that "contest a sanction or remedy" arise under the Medicare Act). But Country Club Hills failed to present its claim for administrative review— even though IDPH gave notice of its right to request an ALJ hearing in its March 26, 2024 and April 15, 2025 notices. HHS Exs. 10, 12. Not only did Country Club Hills not request a hearing, HHS Ex. 17 (Declaration of Rosibel O'Brien-Cruz), it affirmatively waived its right to an ALJ hearing in exchange for an $85,0374.40 reduction in the CMP. *See* HHS Exs. 14, 15, 16.

Country Club Hills's failure to present its arguments to the Secretary through the available administrative process meant that the Secretary could not make a decision concerning them. "Neither the Secretary nor the court can waive presentment because § 405(g) requires a decision, and without presentment the Secretary cannot make any decision at all." *Ill. Ins. Guar. Fund*, 33 F.4th at 923-24; *see also Mathews*, 424 U.S. at 328. Country Club Hills's failure to present its claims, without more, requires dismissal. Moreover, having failed to present its claims for administrative review, Country Club Hills necessarily also failed to administratively exhaust its claims through the ALJ and DAB review stages. Subject-matter jurisdiction is also barred for that reason. The exhaustion requirement is waivable, but this makes little difference here. As the Seventh Circuit recently held, "[w]hen the government invokes the defense, we enforce the exhaustion requirement." *Ill. Ins. Guar. Fund*, 33 F.4th at 924.

12

**IV.     Plaintiff Lacks the Standing Needed to Establish Subject-Matter Jurisdiction.**

"The jurisdiction of federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016). In the absence of standing, there is no case or controversy, and accordingly, no subject-matter jurisdiction. *Id*. Standing requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Accordingly, to have standing, Country Club Hills must set forth sufficient factual allegations supporting its claim that it suffered an injury in fact that was fairly traceable to wrongful conduct of the defendants. *Diedrich*, 839 F.3d at 588. "The alleged injury must be concrete and not just a procedural violation divorced from any harm." *Id.*

In this case, the existence of a concrete injury depends on the assumption that Country Club Hills was entitled to earlier compliance dates than CMS found, with the result that the remedies against it were of impermissible duration. But the complaint leaves its compliance dates to assumption. For each survey, Country Club Hills alleges that it submitted a plan of correction and then implemented it "shortly thereafter." Country Club Hills does not allege, however, *when* it came into substantial compliance for the various surveys, and it disavows any intention of raising the issue here. Country Club Hills states in its complaint that it is not disputing the findings and determinations of the IDPH surveys. Compl. ¶ 87. But these findings and determinations include the date that Country Club Hills returned to compliance with deficiencies found at prior surveys. In other words, Country Club Hills professes that it is not contesting the very determinations that it would need to demonstrate are incorrect in order show it has suffered a concrete injury.

13

Standing is most glaringly lacking in Country Club Hills's challenge to SOM § 7317.2 (*see* Compl. ¶ 98), given that the provision is *not* being applied against it. And even if Country Club Hills could show that the Secretary improperly applied the provision to it, it would not be able to show harm. Far from alleging any concrete injury from application of SOM § 7317.2, Country Club Hills alleges that application of the provision would be to its benefit.

**V. Sovereign Immunity Bars Jurisdiction over Counts II and III of Plaintiff's Complaint.**

Even if subject-matter otherwise existed, sovereign immunity would defeat jurisdiction over Country Club Hills's non-APA claims in Counts II and III.[5] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Any waiver of sovereign immunity must be "unequivocally expressed" by Congress in statutory language authorizing suit against the government. *Lane v. Pena*, 518 U.S. 187, 192 (1996). And "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Because sovereign immunity is jurisdictional in nature, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021), an absence of waiver requires that the suit be dismissed, *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Radin v. United States*, 699 F.2d 681, 684-85 (4th Cir. 1983).

Country Club Hills has not cited any provision waiving sovereign immunity, and none applies here. Neither 28 U.S.C. § 1331 nor the Declaratory Judgment Act waives sovereign immunity. *Weinberger*, 422 U.S. at 788; *Progressive Consumers Fed. Credit Union v. United*

---

[5] The APA contains a waiver of sovereign immunity, 5 U.S.C. § 702; *Califano v. Sanders*, 430 U.S. 99 (1977), and Count I of the complaint is based on the APA. But Count I must be dismissed for lack of subject-matter jurisdiction as discussed *supra*.

14

*States*, 79 F.3d 1228, 1230 (1st Cir. 1996). And while § 405(g) includes a waiver of sovereign immunity, that waiver is conditioned on exhaustion. *See Cleveland v. Sec'y of Health & Human Servs.*, No. 93 C 0994, 1993 WL 321755, at *3 (N.D. Ill. Aug. 19, 1993) ("Absent the fulfillment of Section 405(g)'s requirements . . . , Congress has not waived sovereign immunity.") Country Club Hills cannot avail itself of the waiver of sovereign immunity in § 405(g) because, as discussed above, it has not met the exhaustion requirements of § 405(g). Those requirements, as conditions on a legislative waiver of sovereign immunity, must be strictly observed. *Block*, 461 U.S. at 287.

## Conclusion

For the foregoing reasons, the court should dismiss this suit for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) due to Country Club Hills's failure to present its claims or exhaust administrative remedies, its lack of standing, and the United States' sovereign immunity as to Counts II and III.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel

ALAN S. DORN
Chief Counsel, Region V

MARK BROOKER
Assistant Regional Counsel
U.S. Department of Health and Human
Services
Office of the General Counsel, Region V
230 S. Dearborn St., Suite 3187
Chicago, IL 60604-1505
(312) 886-5103
Mark.Brooker@hhs.gov

By: s/ William M. Strom
    WILLIAM M. STROM
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 697-4087
    william.strom@usdoj.gov