## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ELEVATE CARE COUNTRY CLUB
HILLS, LLC,

      Plaintiff,

      v.

ROBERT F. KENNEDY, Jr. *et al.*,[1]

      Defendants.

No. 24-cv-04755

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to dismiss (Dkt. 19). For the reasons that follow, the motion is granted, and Plaintiff's complaint is dismissed. By separate order, Plaintiff will be given leave to submit an amended complaint if it believes it can cure the deficiencies identified in this opinion.

## I.    BACKGROUND

Elevate Care Country Club Hills, LLC ("Country Club Hills" or "Plaintiff") is a healthcare company that operates skilled nursing facilities ("SNFs") and participates in the Medicare program, a subsidized health care program that reimburses certified providers for certain services provided to Medicare beneficiaries. To participate in the Medicare program as a certified provider, Plaintiff must comply with a statutory and regulatory regime that is enforced, at least in part, by the United States Department

---

[1] The caption has been changed to reflect that Robert F. Kennedy, Jr. was sworn in as Secretary of Health and Human Services on February 13, 2025. *See* Fed. R. Civ. P. 25(d) (successor to office "is automatically substituted as a party.").

of Health and Human Services ("HHS"). *See* 42 U.S.C. § 1395 *et seq.* At relevant times, the Secretary of HHS administered Medicaid through the Centers for Medicare & Medicaid Services ("CMS"), an agency within HHS administered at the time this lawsuit was filed by Chiquita Brooks-LaSure. (Dkt. 1 ¶¶ 6–7.) HHS also contracts with state health agencies, including the Illinois Department of Public Health ("IDPH"), to conduct examinations of CMS participants and determine whether those participants are compliant with the Medicare Act and its underlying regulations.

This case stems from determinations made by IDPH on behalf of HHS that Plaintiff failed to comply with certain regulations, which led to the assessment of a monetary penalty against Plaintiff. But rather than challenging the determinations made by IDPH within the HHS administrative process, Plaintiff agreed to waive its right to an administrative hearing in exchange for a 35% reduction in its outstanding penalty. (*See* Dkt. 20-14.) Plaintiff then filed a complaint in federal court alleging that Defendants violated the Administrative Procedure Act, the United States Constitution, and its own internal policies. (*See* Dkt. 1.) Defendants have moved to dismiss Plaintiff's complaint on the grounds that Plaintiff did not properly present its claims to HHS nor exhaust its administrative remedies through the HHS appeals process, a prerequisite for this Court to retain subject matter jurisdiction over the matter. (Dkt. 19.)

### A. The Statutory and Regulatory Framework of the HHS Administrative Process

CMS contracts with state agencies such as IDPH to administer surveys of SNFs that participate in Medicare to determine whether the SNFs are in substantial

compliance with Medicare requirements. 42 U.S.C. §§ 1395aa; 1395i-3(g). IDPH conducts different types of surveys, as specified under the Medicare Act. For example, SNFs receive an annual or "standard" survey at intervals of no more than 15 months; statewide average intervals must be 12 months or less. *Id.* § 488.308(a)-(b). Revisit surveys are used to determine whether nursing homes have corrected the deficiencies cited within previous surveys. 42 C.F.R. § 488.308(c). When a SNF survey identifies deficiencies, the facility completes a "Plan of Correction" to explain how it will cure those deficiencies. 42 C.F.R. § 488.401 (defining Plan of Correction). Plans are reviewed by IDPH, which either accepts the plan or works with the facilities to modify it. (Dkt. 1 ¶ 9.) Deficiencies may result in the imposition of a civil monetary penalty. 42 U.S.C. § 1395i-3(h)(2)(B)(ii)(I). Regulators impose a penalty from the time the SNF goes out of compliance until it returns to substantial compliance. *See Neighbors Rehab. Ctr., LLC v. Dep't of Health and Hum. Servs.*, 910 F.3d 919, 921–22 (7th Cir. 2018) (explaining the regulatory framework).

CMS maintains an internal policy, according to Plaintiff's allegations, that revisit surveys must be conducted within 60 days of the initial survey date. (Dkt. 1 ¶ 12 (citing State Operations Manual ("SOM") § 7317.2).) When a revisit survey finds that a facility has returned to substantial compliance, the facility receives a Post-Certification Revisit Report. If a facility is found to be outside of substantial compliance for over three months, the Medicare Act requires the Secretary to impose a denial of payment for new Medicare or Medicaid admissions ("DPNA"), and after six months of continuous noncompliance, the Secretary must terminate the facility's

provider agreement. 42 U.S.C. § 1395i-3(h)(2)(C)-(D). DPNAs also continue in effect, and per-day fines continue to accrue, while a facility remains out of substantial compliance. 42 C.F.R. §§ 488.417, 488.440(b).

When CMS imposes an enforcement remedy against a facility that has failed to substantially comply with a Medicare requirement, the facility may request a formal evidentiary hearing before an administrative law judge to contest its deficiency findings. 42 C.F.R. §§ 488.408(g)(1), 498.3(b)(13). Facilities may appeal initial deficiency findings for which remedies are imposed as well as findings regarding the duration of noncompliance, provided that the duration affects the remedies. *Elant at Fishkill*, DAB No. 2468, 2012 WL 4863666, at *1 (2012). HHS incentivizes SNFs to waive their rights to a hearing and to the appellate process in exchange for 35% reduction in the monetary penalty. (Dkt. 1 ¶ 37); 42 C.F.R. § 488.436(b).

## B. IDPH Surveys of Country Club Hills

Plaintiff alleges that IDPH conducted a survey at Country Club Hills between October 5, 2023 and October 11, 2023 (the "October Survey"). (Dkt. 1 ¶ 59.) IDPH found that Plaintiff had not provided certain incontinence care to a resident, which led IDPH to find that Plaintiff was not in substantial compliance. (*Id.*) Plaintiff submitted a Plan of Correction in response. (*Id.* ¶ 60.) Plaintiff alleges that it was prepared for IDPH to conduct a revisit survey "shortly thereafter" to determine whether Plaintiff was in substantial compliance, but IDPH instead conducted a new survey from November 9 to November 15, 2023 (the "November Survey"). During the

November Survey, IDPH found additional instances of noncompliance related to wound care. (*Id.* ¶¶ 60–62.) IDPH then conducted three more surveys in December 2023 (the "December Survey"), January 2023 (the "January Survey"), and March 2024 (the "March Survey") without conducting a revisit survey to determine whether Plaintiff addressed IDPH's earlier findings of noncompliance. (*Id.* ¶¶ 68–81.)

IDPH thus conducted revisit surveys past the 60-day mark for the October, November, December, and January Surveys.[2] As IDPH conducted additional surveys of Plaintiff's facility without confirming Plaintiff's return to compliance, the amount of time that Plaintiff remained noncompliant continued to accrue, increasing the penalties levied against Plaintiff. At the time that Plaintiff filed its complaint, CMS had issued a penalty notice imposing a fine of $303,705 for 153 days of noncompliance and a DPNA of 123 days. Plaintiff alleges that it was prepared for IDPH's revisit surveys well ahead of when they eventually took place and that Plaintiff repeatedly invited IDPH to return to confirm Plaintif's corrective action. (*Id.* ¶ 83.)

On May 22, 2024, CMS sent Plaintiff an email granting a request for the penalty amount to be lessened due to the financial burden it imposed, reducing the penalty to $242,964. (Dkt. 20-13.) In addition, Plaintiff waived its appeal rights in exchange for a reduction in the outstanding penalty amount. It sent CMS a letter dated May 24, 2024 stating that Plaintiff wished to "waive its right to a hearing in favor of the 35% reduction of the Civil Money Penalty." (Dkt. 20-14.) Plaintiff then

---

[2] For the October 11, 2023 and November 15, 2023 Surveys, IDPH conducted revisit surveys by January 16, 2024. (Dkt. 1 ¶ 82.) For the December 22, 2023 and January 16, 2024 Surveys, IDPH conducted revisit surveys by March 29, 2024. *Id.*

filed a complaint in federal district court, pleading that the Court had jurisdiction under 28 U.S.C. § 1331. By the time Plaintiff filed its complaint, CMS had reduced the final amount due to $157,926. (Dkt. 20-15.)

### C.    Plaintiff's Claims

Plaintiff brings three claims stemming from IDPH's delay in performing revisit surveys of Plaintiff's facilities. Plaintiff first states that three different agency actions violate the Administrative Procedure Act ("APA"). Plaintiff asks that this Court "declare pursuant to 28 U.S.C. § 2201 that CMS has violated the APA" by (1) promulgating regulations related to revisit timing; (2) establishing the substantive 60-day rule in SOM § 7317.2 without going through the requisite notice and comment process required under 5 U.S.C. § 553; and (3) conducting revisit surveys past the 60-day deadline. Plaintiff asks that the Court consider all penalties imposed by the surveys "null and void and set aside" as a result. (Dkt. 1 ¶ 105.) Plaintiff next seeks a declaratory judgment "under 28 U.S.C. § 2201 that 42 C.F.R. § 488.454(a) and its related regulations regarding revisit timing . . . are unconstitutional . . . for vagueness and due process violations." (*Id.* ¶¶ 106–16.) Plaintiff seeks, finally, a declaratory judgment that CMS, through IDPH, violated its own regulations in failing to conduct revisit surveys in a timely manner, and as a result, "any and all related findings and penalties from the Surveys should be considered null and void." (*Id.* ¶¶ 117–23.)

Plaintiff states that the Court has jurisdiction over these claims under 28 U.S.C. § 1331, thus invoking the Court's federal question jurisdiction. Defendants

move to dismiss Plaintiff's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing, among other things, that Plaintiff failed to present and exhaust its claims through the administrative process established under the Medicare Act, which bars federal question jurisdiction, and that the sovereign immunity doctrine bars jurisdiction over Counts II and III. (Dkt. 20.) Whether Plaintiff can bring its claims under this Court's federal question jurisdiction thus constitutes the dispositive issue before the Court.

## II.    LEGAL STANDARD

When reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must assess whether Plaintiff has carried its burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). To resolve a factual challenge to Plaintiff's assertion that jurisdiction exists, the Court may look to the complaint along with evidence outside of the pleadings. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Still, a court "need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718, 722 (7th Cir. 2012). In addition, a court lacking subject matter jurisdiction must dismiss the action without proceeding to the merits. *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006).

## III. DISCUSSION

### A. The Statutory and Regulatory Framework of the Medicare Act

General federal question jurisdiction under 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." By "operation of several interrelated provisions," however, the Medicare Act "generally prohibits judicial review of claims arising under the Act unless they meet certain requirements." *Columbus Park Nursing and Rehab. Ctr. v. Sebelius*, 940 F. Supp. 2d 805, 814 (N.D. Ill. 2013). The Social Security Act at 42 U.S.C. § 405(h) provides that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof, shall be brought under § 1331 . . . to recover on any claim arising under" the Social Security Act. That provision is incorporated into the Medicare Act through 42 U.S.C. § 1395ii, stripping district courts of federal question jurisdiction over claims arising under the Medicare Act. Section 405(g) of the Social Security Act, as incorporated into the Medicare Act through 42 U.S.C. § 1395cc(h)(1), authorizes judicial review only for a "final decision" of the Secretary after a hearing. Accordingly, Section 405(h) "has been held to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted." *Michael Reese Hosp. and Med. Ctr. v. Thompson*, 427 F.3d 436, 440 (7th Cir. 2005).

Extending to all provider claims "arising under" the Medicare Act, Section 405(g) creates a channeling requirement for claims where "both the standing and the substantive basis for the presentation' of a claim is the Medicare Act[.]" *Shalala v.*

*Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) (quoting *Heckler v. Ringer*, 466 U.S. 602, 615 (1984)). Accordingly, Medicare provider claims that " 'contest a sanction or remedy'—even if contesting the 'constitutionality of interrelated regulations or statutory provisions' or 'disput[ing] agency policy determinations,'— must satisfy § 405(g)'s 'channeling requirements' before courts will have subject-matter jurisdiction to resolve the dispute." *Generations at Elmwood Park, LLC v. Ezike*, 2023 WL 5804230, at *4 (N.D. Ill. Sep. 7, 2023) (quoting *Ill. Council*, 529 U.S. at 14)).

District courts' subject matter jurisdiction over claims arising under the Medicare Act is therefore limited to claims that have been presented to the Secretary and exhausted through the HHS administrative process. *See Columbus Park Nursing and Rehab. Ctr.*, 940 F. Supp. 2d at 815 ("a party who wishes to bring a claim 'arising under' the Medicare Act must begin by presenting that claim to HHS and may seek judicial review only from a final decision made by the Secretary after a hearing."). Although HHS can "waive a plaintiff's failure to exhaust some or all of the steps in the administrative review process without defeating jurisdiction under Section 405(g)," presentment is "essential and non-waivable." *Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 923 (7th Cir. 2022).

## B.    The *Michigan Academy* Exception

Despite the channeling requirements of the Medicare Act, the Supreme Court has recognized that claims arising under the Medicare Act need not walk through the administrative process where "application of § 405(h) would not simply channel

review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. This exception, known as the *Michigan Academy* exception, requires some explanation, as it is the sole avenue by which claims arising under the Medicare Act can escape the channeling requirement of Section 405(g). *See id.* at 11 ("Were we not to take account of that case, § 405(h) . . . would clearly bar this § 1331 lawsuit.").

In *Bowen v. Michigan Academy of Family Physicians*, the Supreme Court recognized that the statutory framework for Medicare Part B, which provided supplemental insurance for outpatient medical services through private insurance carriers, enabled claimants to request a hearing before a participating insurance carrier to challenge "amount determinations" rendered by the carrier. 476 U.S. 667, 675 (1986). But the Medicare Part B statutory scheme did not say whether claimants could then seek review of an amount determination in federal court following a hearing before an insurance carrier. *Id.* at 674–75. Contrasting the language between the statutes governing Medicare Parts A and B, the Supreme Court concluded that Congress had stripped district courts of federal question jurisdiction over challenges to amount determinations under Medicare Part B through Section 405(h) as incorporated by Section 1395ii. *Id.*

But what of challenges to the *method* by which an insurance carrier computed an amount determination, the question that had given rise to the case? The statutory framework governing Medicare Part B was silent on this issue. Observing that Congress had delegated "amount determinations" to private carriers through explicit statutory language, the Supreme Court explained that Congress, by the same token,

10

had not delegated to insurance carriers the power to adjudicate any other matters, such as challenges to the validity of the HHS Secretary's instructions and regulations. *Id.* at 675–80. The Supreme Court concluded that Section 405(h), as incorporated through Section 1395ii, barred judicial review of amount determinations under Medicare Part B but not challenges to the methodology by which amount determinations were computed. *Id.* at 678–82. Those latter challenges could be brought as claims in a district court under federal question jurisdiction. *Id.*

A question remained following *Michigan Academy*, however, regarding the scope of Section 405(h): If Section 405(h) stripped federal question jurisdiction over challenges to Medicare amount determinations but did not strip district courts' jurisdiction over challenges to the method behind those determinations, did Section 405(h) bar *only* challenges to amount determinations in Medicare claims? In *Ill. Council*, the Supreme Court clarified that it did not. 529 U.S. at 15–18.

Interpreting *Michigan Academy*, the Supreme Court emphasized that the Medicare Act delegated to private insurance carriers the adjudication of challenges to amount determinations under Medicare Part B, but not the adjudication of any other matters. *Id.* at 15–16. Private carriers, after all, appeared well suited to handle adjustments to insurance claims, but Congress could not have intended for private carriers to handle, for instance, constitutional challenges to the entire regulatory scheme of Medicare Part B. *See id.* at 17. But if Section 405(h) closed off judicial review to claims other than amount determinations, then Medicare Part B claimants could not bring those challenges before a private carrier *or* a federal court. Claimants,

in effect, could not bring those challenges anywhere. *Michigan Academy*, the Supreme Court explained, had thus carved out an exception for claims arising under the Medicare statute that, if not entitled to judicial review, were entitled to "no review at all." *Id.*

Constitutional and statutory challenges to Medicare Part A regulations, however, fall outside the scope of the *Michigan Academy* exception. In *Ill. Council*, an association of nursing homes sued HHS and the HHS Secretary in federal district court, invoking the court's federal question jurisdiction and claiming that certain Medicare-related regulations violated federal statutes and the Constitution. *Id* at 5. The Supreme Court held that Section 405(h), as incorporated into the Medicare Act by Section 1395ii, barred federal question jurisdiction over the plaintiff's claims, rejecting a "distinction that limits the scope of [Section 405(h)] to claims for monetary benefits." *Id.* at 14. While *Michigan Academy* construed the delegation of adjudicative authority to private insurance carriers under Medicare Part B narrowly, *Ill. Council* stated that, under Medicare Part A, "[t]he fact that the agency might not provide a hearing for that particular contention, or may lack the power to provide one . . . [,] is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Id.* at 23.

Accordingly, courts within the Seventh Circuit have emphasized that "styling a claim arising under the Medicare Act as a constitutional challenge does not ordinarily permit a plaintiff to forgo exhausting administrative remedies[,]" nor does it enable the plaintiff to avoid the channeling requirement. *Ill. Ins. Guar. Fund*, 33

F.4th at 924; *Homewood Pro. Care Ctr. Ltd. v. Heckler*, 764 F.2d 1242, 1253 (7th Cir. 1985) ("the Medicare Act clearly requires the presentation of all disputes including any and all constitutional questions to the Board."); *see also Columbus Park Nursing and Rehab. Ctr.*, 940 F. Supp. 2d at 817 (the court lacked jurisdiction over the plaintiff's due process claim where plaintiff "could have obtained review" from HHS but did not).

### C.   Plaintiff's Claims and the *Michigan Academy* Exception

Platiniff does not allege that it ever presented its claims to the Secretary or that it exhausted its claims through the HHS administrative process. (Dkt. 1; Dkt. 24.) In its response to Defendants' motion to dismiss, rather, Plaintiff reframes its claims as general challenges to the constitutionality of the entire administrative appeals process rather than the regulatory provisions identified in the complaint. Plaintiff argues that the appointment and removal process for HHS Administrative Law Judges ("ALJs") is unconstitutional, as is the imposition of monetary penalties for violations of Medicare regulations. (Dkt. 24 at 4–11.) Plaintiff then states that, because the HHS administrative process is unconstitutional, it need not have channeled its claims through the process. (*Id.* at 12.) In the alternative, Plaintiff contends that its claims fall within the *Michigan Academy* exception. (*Id.* at 13.)

Each of Plaintiffs claims, however, is subject to the channeling requirement of Section 405(g), and none falls within the *Michigan Academy* exception. First, Plaintiff cannot reframe its claims in its response brief from an attack on specific Medicare regulations regarding the timing of revisit surveys to a broader claim that the HHS

13

administrative process is unconstitutional. *See Sobilo v. Seleman*, 2006 WL 1762353, at *5 (N.D. Ill. June 27, 2006) ("A plaintiff may assert additional facts to clarify an existing claim, but he may not amend (that is, correct or alter) his complaint such that he essentially asserts a new claim."). It must amend its complaint if it would like to bring new claims beyond those pleaded in the complaint.

Second, each of Plaintiff's claims arise under the Medicare Act as "both the standing and the substantive basis for the presentation of a claim is the Medicare Act," and the claims are "inextricably intertwined" with regulations governing the timing of revisit surveys under the Medicare Act. *See Ill. Council*, 529 U.S. at 12 (internal quotations omitted); *Heckler*, 466 U.S. at 614.[3] In Counts I and III of its complaint, Plaintiff alleges an injury tied to the delayed timing of the IDPH revisit surveys, insisting that "any and all related findings and penalties from the Surveys should be considered null and void and set aside." (Dkt. 1 ¶¶ 105, 123.) In seeking a declaratory judgment on the constitutionality of Medicare regulations in Count II, Plaintiff alleges that underlying controversy at issue is "whether 42 C.F.R. § 488.454(a) and the related regulations . . . are constitutional." (Dkt. 1 ¶ 110.) Because the alleged injuries and controversies underlying each of Plaintiff's claims

---

[3] Defendants argue that Plaintiff lacks standing to bring any of its claims because Plaintiff's complaint does not allege sufficient facts to show that it was entitled to earlier compliance dates. (Dkt. 20 at 13.) Platiniff does not address this argument in its response brief. (Dkt. 24.) But because Plaintiff's failure to present its claims before the Secretary and exhaust administrative remedies bars the Court's subject matter jurisdiction as explained below, the Court does not consider Plaintiff's standing to sue. *See Ill. Ins. Guaranty Fund*, 33 F.4th at 923 ("Because the [plaintiff's] failure to exhaust administrative remedies means it cannot invoke the grant of subject-matter jurisdiction in § 405(g), we do not consider the [plaintiff's] standing to sue.").

concern a Medicare regulation or a related penalty, and no separate liberty or property interest is at stake in this lawsuit, the standing and substantive bases for those claims are inextricably intertwined with the Medicare Act, and they are subject to the channeling requirement of Section 405(g).

Plaintiff cites *Boumediene v. Bush*, 553 U.S. 723 (2008) and *Columbus Park Nursing and Rehab. Ctr.*, 940 F. Supp. at 818, for the contention that it need not present and exhaust its claims if Section 405(h) is unconstitutional. But no legal authority, including those cases, holds that Section 405(h) violates the Constitution. Indeed, the plaintiff in *SEC v. Jarkesy*, a case regarding the authority of U.S. Securities and Exchange Commission ("SEC") ALJs that Plaintiff frames as a controlling on the constitutionality of the HHS administrative process, walked through the SEC's administrative process before challenging the constitutionality of the SEC ALJ's actions in federal court. 603 U.S. 109, 119 (2024) (the plaintiff sought judicial review of a "final order" released by the SEC following a hearing before an ALJ). Accordingly, *Jarkesy* did not invalidate any statutory limitation on the jurisdiction of the federal courts that channeled claims to administrative review. In the case at hand, Plaintiff circumvented the administrative review process, preventing this Court from reaching the constitutional challenges Plaintiff presents. Because the Court does not have jurisdiction to find the HHS administrative process unconstitutional (as discussed above), it will not address Plaintiff's arguments regarding the unconstitutionality of the HHS administrative process.

Plaintiff's claims do not fall within the *Michigan Academy* exception because, unlike in *Michigan Academy*, Plaintiff here had an opportunity for administrative review but did not take it. Plaintiff waived its right to a hearing regarding its compliance penalties in exchange for a reduction to the penalty amount. (Dkt. 20-14.) At an administrative hearing, Plaintiff could have argued that the timing of its noncompliance should have been backdated to match the timing of its corrective action and presented evidence to support its argument. *See* 42 C.F.R. § 488.454(a). Indeed, Plaintiff concedes that "a facility may challenge the duration of a penalty by providing evidence establishing an earlier date of compliance during a single survey." (Dkt. 24 at 14 n.8.) Adjusting the duration of the penalties levied against Plaintiff through the administrative process would have addressed Plaintiff's alleged injury, but Plaintiff did not present its claims to the Secretary or exhaust the administrative remedies that were available.

Plaintiff argues in rebuttal that the "central issue" of its complaint is that "the state survey team is permitted unilaterally to delay revisits, find other instances of noncompliance with the facility via multiple intervening surveys, and thereby extend the duration and amount of the penalty to impose on the facility." (*Id.*) But attacking "only the procedure" used by an administrative agency rather than the substance or merits of an agency decision cannot circumvent Section 405(h). *Ancillary Affiliated Health Services, Inc. v. Shalala*, 165 F.3d 1069, 1070 (7th Cir. 1998). Because Plaintiff's claims arise under the Medicare Act and could have gone through the HHS

administrative process under Section 405(g) before becoming eligible for judicial review, they do not fall within the *Michigan Academy* exception.

Plaintiff argues in the alternative that its claims fall within the *Michigan Academy* exception because, assuming that the HHS administrative process is unconstitutional, administrative review within an unlawful process would amount to "no review at all." (Dkt. 24 at 13.) But the *Michigan Academy* exception applies when a denial of judicial review would foreclose any review at all, not when a plaintiff alleges that the review provided by a statutory framework is unconstitutional or unlawful.[4] *See Ill. Council*, 529 U.S. at 23 ("The fact that the agency might not provide a hearing for that *particular contention* . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency."). Accepting Plaintiff's argument would enable plaintiffs to simply recast challenges to monetary penalties under the Medicare Act as constitutional attacks and circumvent the channeling requirement imposed by Congress.[5] In addition, and as discussed

---

[4] Plaintiff cites *Council for Urological Interests v. Sebelius* for the contention that the *Michigan Academy* exception applies when a "serious practical roadblock" inhibits review of a claim. 668 F.3d 704, 712 (D.C. Cir. 2011). That case, brought by an association of medical equipment providers rather than healthcare providers, clarified that "[i]n cases where the only entities able to invoke Medicare Act review are highly unlikely to do so, their unwillingness to pursue a Medicare Act claim poses a serious 'practical roadblock' to judicial review." *Id*. Because Plaintiff is a Medicare provider, the exact sort of entity that may invoke administrative relief under the Medicare Act, the "roadblock" referred to in *Council for Urological Interests* is not present here.

[5] Principles beyond adherence to rigid formalism support this channeling requirement. Proceeding through HHS's administrative process "provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges." *Ill. Council*, 529 U.S. at 24. Even if the Secretary cannot review the timing of revisit surveys as Plaintiff states, the channeling requirement enables the Secretary and the agency to consider revising its policies and regulations to address the procedural concerns articulated by Plaintiff.

17

above, Plaintiff does not allege or otherwise show that Section 405(h) is unconstitutional, and so the Court need not address whether such a claim would itself be subject to the channeling requirements of the Medicare Act. (*See* Dkt. 1.)

Plaintiff's complaint separately suggests that, because Defendants can delay a revisit survey while fines continue to accumulate, they can effectively coerce parties into waiving their right to a hearing before the Secretary in exchange for a fine reduction. (Dkt. 1 ¶¶ 34–38.) But any "delay-related hardship" incurred by presentment and exhaustion does not allow plaintiffs to circumvent the channeling requirement of Section 405(g). *Generations at Elmwood Park*, 2023 WL at \*5 (quoting *Ill. Council*, 529 U.S. at 13); *see also Physician Hosps. of America v. Sebelius*, 691 F.3d 649, 659 (5th Cir. 2012) ("delay-related hardship" incurred by the HHS administrative review process does not defeat the channeling requirement of § 405(h)). As the Supreme Court has observed, "Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year." *Heckler*, 466 U.S. at 627. This Court cannot second-guess that legislative determination.

Finally, the parties dispute whether Counts II and III of Plaintiff's complaint should be dismissed on the grounds that sovereign immunity bars the Court's jurisdiction. Defendants argue that neither "28 U.S.C. § 1331 nor the Declaratory Judgment Act waives sovereign immunity," and "§ 405(g) includes a waiver of

sovereign immunity" that is "conditioned on exhaustion." (Dkt. 20 at 14.) Plaintiff responds that the exhaustion requirement of Section 405(g) is unconstitutional and therefore cannot serve as a legitimate condition for waiving sovereign immunity. (Dkt. 24 at 14.) But because the Court finds that it has no jurisdiction over any of Plaintiff's claims given that they did not comply with the channeling requirement of the Medicare Act, the Court need not determine at this time whether a waiver of sovereign immunity under Section 405(g) is conditioned upon administrative exhaustion.

## IV. CONCLUSION

Because Plaintiff did not present its claims to the Secretary and does not show that its claims are excepted from the channeling requirement found in Section 405(g) as incorporated into the Medicare Act, Plaintiff cannot bring its claims within this Court's federal question jurisdiction as it contends. Because Plaintiff has not carried its burden to show that the Court has subject matter jurisdiction over this case, Defendant's motion to dismiss (Dkt. 19) is granted.

SO ORDERED in No. 24-cv-04755.

Date: September 30, 2025

_____
JOHN F. KNESS
United States District Judge